IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM KELLEY, | ) | CASE NO. 5:10 CV 731 |
| | ) | |
| Petitioner, | ) | CHIEF JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| KEITH SMITH, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

## Introduction

Before me by referral[1] is the *pro se* petition of William Kelley[2] for a writ of habeas corpus under 28 U.S.C. § 2254.  In addition, Kelley raises the issue of an evidentiary hearing in his traverse.[3]

Kelley is currently in state custody at the Mansfield Correctional Institution in Mansfield, Ohio,[4]  where he is serving a sentence of fifteen years to life imposed in 2008 by the Stark County (Ohio) Court of Common Pleas[5] after Kelley was convicted at a jury trial of murder as a proximate result of child endangering and child endangering.[6]

---

[1] The matter was referred to me under Local Rule 72.2 by non-document order entered June 7, 2010.

[2] ECF # 1.

[3] ECF # 25.

[4] ECF # 1 at 2; *see also*, www.drc.ohio.gov (confirming current status).

[5] ECF # 1 at 2; ECF # 8, Attachment (state court record) at 15.

[6] ECF # 8, Attachment at 14.

In his petition for habeas relief, Kelley raises five grounds for relief.[7]  The State, in its return of the writ, argues that one of Kelley's claims is non-cognizable[8] and that the remaining four claims should be dismissed as procedurally defaulted.[9]  Kelley has filed a traverse.[10]

For the reasons that follow, I will recommend finding that the State's arguments are well-taken and that Kelley's petition should, therefore, be dismissed as procedurally defaulted or alternatively denied because the state appellate opinion was not an unreasonable application of clearly established federal law.

## Facts

### A.     Underlying facts, conviction, and sentence

The facts underlying Kelley's conviction, as found by the state appeals court,[11] are somewhat lengthy but straightforward.

---

[7] ECF # 1.

[8] ECF # 8 at 12-16.

[9] *Id*. at 16-30.

[10] ECF # 25.

[11] Facts found by the state appellate court on its review of the record are presumed correct by the federal habeas court.  28 U.S.C. § 2254(e)(1); *Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir. 2001).

Crystal Sisson and her two young children – a boy, Mizia, aged one; and a girl, Brianna, aged two – checked into the Chase Motel in Canton on March 30, 2008, accompanied by Kelley, who was not the children's father but who had been living with Sisson and the children for a short time.[12] During the evening, Sisson fell asleep, but Mizia's crying woke her.[13] Sisson stated she then saw Kelley several times place Mizia in a sitting position on top of a dresser and then jerk the child off the dresser top by his feet, causing him each time to hit his head on the floor.[14] Kelley then placed Mizia in bed where Sisson wiped blood away from Mizia's lip.[15] Sisson testified that she did not see her son awake again after this.[16]

The next morning, Kelley told Sisson that Mizia had been up all night vomiting.[17] Sisson then went alone to keep an appointment at the welfare office, leaving Kelley and the two children at the motel.[18] Shortly after she returned, Sisson, her children, and Kelley checked out of the Chase Motel and "moved" to the Perry Inn, another motel in nearby Perry Township.[19] While carrying Mizia to the Perry Inn, Sisson noticed the child's lips were blue,

---

[12] ECF # 9, Attachment at 106.

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.*

and he was having trouble breathing.[20]  Upon arriving at the new motel, Sisson noticed that

Mizia had stopped breathing and so paramedics were called.[21]  The paramedics arrived to

find Mizia cold to the touch, but still with a pulse.[22]  Vomit was observed on the boy's shirt.[23]

Sisson told the paramedics Mizia had been throwing up for a few days and that she

thought he had stopped breathing as a result of choking on the vomit.[24]  Sisson later told a

nurse at the hospital that Mizia could have been hit, but "not by me."[25]  She also stated that

Mizia had crawled up on top of a dresser and fallen off, although she acknowledged that the

boy was not yet able to walk.[26]

Speaking to a "child life specialist" at the hospital, Sisson repeated the assertion that

Mizia had likely choked on his own vomit, but also repeated the claim that his injuries were

due to him climbing on top of a dresser and falling.[27]  In a conversation with police, Sisson

said that the child had fallen from a dresser, but now said that Kelley had put him there.[28]

She also told police that Kelley had struck Mizia with his closed fist two times in the back

---

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] *Id.*, at 107.

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] *Id.*

of the head and had pulled Mizia off the dresser by his feet three or four times, causing Mizia to hit his head and back on the ground.[29]

Kelley, in turn, told police he did not know why Mizia was so severely injured.[30] He stated that he believed Mizia had fallen off the dresser, although Kelley admitted he did not witness this, but rather heard the child hit the floor and surmised he had fallen from his bed.[31] Alternatively, Kelley also stated to the police that Brianna "often played rough with Mizia," and that in so doing she would knock him down.[32]

After being transferred to Akron Children's Hospital[33] from Aultman Hospital[34] in Canton, where he had been originally taken by EMS, Mizia was put on life support[35] with little expectation of survival.[36]  He died there several days later.[37]

Noting the variations in the narratives offered as to Mizia's death, the appeals court observed that blood and vomit were present on Kelley's clothes, but not Sisson's.[38]  The

---

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] *Id.*, at 1033.

[34] *Id.*, at 821.

[35] *Id.*, at 1036.

[36] *Id.*, at 1173, 1175.

[37] *Id.*, at 1176.

[38] *Id.*, at 108.

court further noted that the deputy medical examiner testified that Mizia's brain was severely damaged and massively swollen as the result of blunt impacts to the head inconsistent with a simple fall from a bed or a dresser but consistent with being thrown to the floor.[39]

The grand jury indicted Kelley on five counts arising out of the death of Mizia Sisson.[40]  Following a trial, a jury found Kelley guilty of murder as the proximate result of child endangering and of child endangering.[41]  On December 23, 2008, the trial judge sentenced Kelley to serve a prison term of 15 years to life for these convictions.[42]

## B.    Direct appeal

### 1.    *The court of appeals*

Kelley, through new counsel,[43] then timely[44] filed a notice of appeal.[45]  In his brief,[46] Kelley raised the following four assignments of error:[47]

---

[39] *Id.*

[40] *Id.*, at 1-2.

[41] *Id.*, at 14.

[42] *Id.*, at 15.

[43] Kelley was represented at trial by Jonathan Baumoel, *see*, *id.*, at 17, and on appeal by Eugene Cazantzes, *id.*, at 18.

[44] Here, final judgment at trial was entered on December 11, 2008, ECF # 9, Attachment at 17.  Kelley filed a notice of appeal on December 23, 2008, *id.* at 17-18. Ohio law provides that to be timely an appeal must be filed within 30 days of entry of judgment. Ohio App. R. 4(A).

[45] ECF # 9, Attachment at 16-17.

[46] *Id.*, at 19-57.

[47] *Id.*, at 20.

1.      The trial court's finding of guilt is against the manifest weight and sufficiency of the evidence.

2.      The trial court's [sic] abused its discretion by improperly precluding the appellant from cross examining witnesses and denying him his right of due process.

3.      The appellant was deprived of due process of law by the misconduct of the prosecutor.

4.      The trial court abused its discretion by improperly admitting gruesome and irrelevant photographs resulting in a denial of the appellant's right to due process.

The State filed a responsive brief.[48]  On December 7, 2009, the Ohio appeals court denied each of Kelley's assignments of error, affirming the judgment of the trial court.[49]

## 2.      *Supreme Court of Ohio*

Kelley, *pro se*, then timely[50] sought review by the Supreme Court of Ohio.[51]  In his memorandum in support of jurisdiction,[52] Kelley asserted the following four propositions of law:

---

[48] *Id.*, at 61-95.

[49] *Id.*, at 102-21.

[50] Ohio Supreme Court Rule of Practice 2.2(A)(1)(a) states that a party must file a notice of appeal in the Supreme Court within 45 days of the entry of the judgment being appealed.  *See also*, *Applegarth v. Warden*, 377 F. App'x 448, 450 (6th Cir. 2010).  Kelley's notice of appeal was docketed at the Ohio Supreme Court on January 21, 2010 (ECF # 9 at 122), or 45 days after the entry of the appeals court decision.

[51] ECF # 9, Attachment at 122-24.

[52] *Id.*, at 125-42.

1. The court commits "plain error" [by] permitting the use of evidence obtained in an illegal search and seizure which violates the equal protection clause of the fourteenth amendment. (Ineffective Assistance of Counsel).[53]

2. When the trial court conveys [an] erroneous charge to the jury, effectively depriving [appellant] of a fair trial by jury, appellants [sic] V, XI, XIV amendment rights are violated [and] plain error is committed.[54]

3. "Plain error" is committed when the trial courts [sic] abuse[s] its discretion by improperly precluding [sic] the appellant compulsory process to procure the attendance of witnesses on his behalf. (Ineffective Assistance of Counsel).[55]

4. Constitutional plain error is committed when "prosecution" establishes collusion with entity [sic] and prejudicial matter relating to defendant and issues of case that goes [sic] beyond public record are disseminated by means of public communication that is willfully designed to affect [sic] outcome of case.[56]

Without obtaining a response from the State, on May 24, 2010, the Supreme Court of Ohio denied leave to appeal, dismissing the appeal as not involving any substantial constitutional question.[57] This record does not indicate that Kelley sought a writ of certiorari from the United States Supreme Court.

---

[53] *Id.*, at 134.

[54] *Id.*, at 135.

[55] *Id.*, at 137.

[56] *Id.*, at 139.

[57] *Id.*, at 168.

### 3.      *Federal habeas petition*

*a.      Kelley's claims*

Before the disposition by the Ohio Supreme Court of his motion for leave to appeal,

Kelley, *pro se*, filed the present motion for habeas relief in this Court on April 8, 2010.[58] In

this petition, Kelley raises five grounds for relief:

| | |
|---|---|
| Ground One: | Conviction was obtained by use of evidence gained pursuant to an unconstitutional search and seizure.  Conviction was obtained by use of evidence obtained pursuant to an unlawful arrest.[59] |
| Ground Two: | Conviction obtained by violation of the privilege against self-incrimination.[60] |
| Ground Three: | Conviction obtained by use of a coerced confession.[61] |
| Ground Four: | Failure to disclose exculpatory evidence and afford compulsory process to present a defense and failing to afford petitioner compulsory process to procure witnesses for his defense.[62] |

Following my order partially granting[63] a motion to amend,[64] ground five was restated,

and three additional grounds for relief were added to the petition:

_____

[58] ECF # 1.

[59] *Id*. at 5.

[60] *Id*.

[61] *Id*. at 6.

[62] *Id*.

[63] ECF # 19.

[64] ECF # 7.

Ground Five:    Conviction was obtained by use of evidence obtained pursuant to an unlawful arrest.[65]

Ground Six:    Conviction was obtained by action of a grand jury or petit jury which was unconstitutionally selected and impaneled.[66]

Ground Seven:    Conviction obtained by unconstitutional statute and defective indictment.[67] (Subsumed within this ground is a claim that the jury instructions were erroneous).[68]

### b.    *State's response*

In response to the original petition, the State filed a return of the writ arguing first that the claim in ground one arising from a purportedly illegal search and seizure is procedurally defaulted because Kelley had not presented it to either the Ohio appeals court or the Supreme Court of Ohio.[69]  Moreover, the State contends that under *Stone v. Powell*[70] claims asserting violations of the Fourth Amendment are non-cognizable in federal habeas proceedings where state law provides a mechanism for a full and fair resolution of such claims.[71]

The State further maintains, as to the alleged Fifth Amendment violation in ground two, that this claim is also procedurally defaulted.  While acknowledging that Kelley raised

---

[65] *Id*. at 11.  This ground is substantially similar to the one asserted in Ground One of the initial petition.

[66] *Id*. at 17.

[67] *Id*. at 30.

[68] *Id*. at 20-24.

[69] ECF # 9 at 12-13.

[70] *Stone v. Powell*, 428 U.S. 465 (1976).

[71] ECF # 9 at 14-16.

this issue to the Supreme Court of Ohio, the State observes that the claim was not asserted to the Ohio appeals court, thus depriving the Supreme Court of Ohio of the opportunity to consider it.[72] Likewise, the State contends that Kelley procedurally defaulted the coerced and perjured testimony claim in ground three by presenting it to the Ohio Supreme Court without previously asserting it to the appeals court.[73]

Similarly, the State argues that ground four is procedurally defaulted.  As to the assertion in this ground that the prosecution withheld exculpatory evidence, the State points out first that Kelley failed to raise this claim in any Ohio court, thus waiving it.[74]  In addition, to the extent this claim involves the assertion that the trial court abused its discretion by disallowing testimony from a defense expert, the State notes that, although the claim was raised to the Ohio appeals court, it was asserted solely as a matter of state law.[75]  Thus, when Kelley attempted to couch the claim as a federal constitutional issue in his brief to the Ohio Supreme Court, that issue was procedurally defaulted since the Ohio Supreme Court cannot hear an issue not raised in the appeals court.[76]

---

[72] *Id.* at 16.

[73] *Id.* at 20-21.

[74] *Id.*

[75] *Id.*

[76] *Id.*

The contention in ground five that the jury was improperly selected is also procedurally defaulted according to the State.[77]  As with aspects of ground four noted above, the State maintains that Kelley failed to raise this claim before the Ohio appeals court, but then later asserted it to the Ohio Supreme Court, which was precluded from reaching it.[78]

In a supplemental return of the writ, the State addresses newly added grounds six and seven.  With regard to ground six, the State points out that this ground – alleging improper selection and impaneling of a jury – is the same as previously asserted in ground five and is similarly procedurally defaulted.[79]  The State maintains that ground seven is procedurally defaulted for never being raised to the Ohio appeals court, although he did argue the claim in his brief to the Ohio Supreme Court.[80]

The State, in multiple places,[81] further argues that Kelley has not shown either cause and prejudice to excuse these defaults, nor has he established his actual innocence such as would permit the federal habeas court to reach the merits of the procedurally defaulted grounds.

---

[77] *Id*. at 29.

[78] *Id.*

[79] ECF # 24 at 1-2.

[80] *Id*. at 2-3.

[81] *See*, ECF # 9 at 13, 21, 23, 29; ECF # 24 at 2.

c.    *Kelley's traverse*

In an extensive, hand-written traverse,[82] Kelley recounts the factual and procedural history of his case; presents a wholly new ground for relief;[83] and attempts to state an argument of ineffective assistance of counsel that would excuse the procedural defaults claimed by the State.[84]  He further asserts that the Supreme Court of Ohio had both the jurisdiction to consider all his claims, despite the claimed procedural default, as well as a "full and fair" opportunity to address those claims.[85]  Finally, he contends that his issues could be more fully developed at an evidentiary hearing.[86]

## Analysis

### A.    Preliminary observations

Prior to further consideration, I make the following observations:

1.    There is no dispute that Kelley is currently in state custody as the result of his conviction by an Ohio court, and was so incarcerated at the time this petition was filed.  Thus, Kelley meets the "in custody" requirement of the federal habeas statute vesting this Court with jurisdiction over this petition.[87]

---

[82] ECF # 25 (41 pages).

[83] *See*, *id*. at 12-17.  Ground one, initially asserted as a search and seizure issue, is totally recast as a two-part claim with an additional new claim of equal protection discrimination.

[84] *Id*. at 24-26.

[85] *Id*. at 27-28.

[86] *Id*. at 31, 40.

[87] 28 U.S.C. § 2254(a); *Ward v. Knoblock*, 738 F.2d 134, 138 (6th Cir. 1984).

-13-

2.    This petition was timely filed within one year of the conclusion of state direct review.

3.    Further, although Kelley in his traverse has requested an evidentiary hearing,[88] he has not sought appointment of counsel.[89]

4.    Finally, although Kelley in his petition asked that it be "filed in conjunction with case number 1:10-cv-565" and assigned to United States District Judge Donald Nugent,[90] an examination of that case discloses that it was not a second or successive petition for habeas relief.[91]

**B.    Kelley should not be granted an evidentiary hearing.**

28 U.S.C. § 2254(e)(2)(A) essentially states that if the existing record refutes the petitioner's factual allegations or otherwise precludes the granting of relief, the district court is not required to conduct an evidentiary hearing.[92]  Moreover, to merit an evidentiary hearing under the statute, the petitioner must have been diligent in seeking an evidentiary hearing in state court "in the manner prescribed by state law."[93]

---

[88] 28 U.S.C. § 2254(e)(2).

[89] 28 U.S.C. § 2254(h).

[90] ECF # 1 at 17.

[91] The case involved a challenge to Kelley's conviction brought as a complaint under 42 U.S.C. §§ 1983 and 1986 against the individual police officers involved in Kelley's case and the institution where he was incarcerated.  The matter was dismissed by Judge Nugent on the grounds that, when a prisoner challenges the fact or duration of his imprisonment, his sole remedy is a federal habeas corpus petition.  Case No. 1:10-cv-565, ECF # 3 at 3.

[92] *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).

[93] *Williams v. Taylor*, 529 U.S. 420, 437 (2000).

-14-

Here, Kelley's reason for requesting an evidentiary hearing is to more fully develop his claims of ineffective assistance of appellate counsel such that those claims could then provide cause to excuse the various procedural defaults.

As the case authority clearly states, an ineffective assistance of counsel argument must first have been presented to and exhausted in the state courts before it is advanced to a federal habeas court as cause to excuse procedural default.[94]  In Ohio, the Ohio Supreme Court has held that a claim of ineffective assistance of appellate counsel must be raised at the first opportunity to do so, which is before the appeals court in an Ohio Rule of Appellate Procedure 26(B) motion for reconsideration.[95]  Similarly, as the Sixth Circuit recently observed, "[Ohio] defendants claiming ineffective assistance of appellate counsel must apply to the Ohio court of appeals for reopening of the direct appeal."[96]

In this case, as noted above, Kelley did not raise a claim of ineffective assistance in his direct appeal and has never moved to reopen his appeal under Ohio Appellate Rule 26(B). He did attempt to bring an issue of ineffective assistance before the Supreme Court of Ohio

---

[94] *Edwards v. Carpenter*, 529 U.S. 446, 451-53 (2000);

[95] *Monzo v. Edwards*, 281 F.3d 568, 577-78 (6th Cir. 2002).

[96] *Landrum v. Mitchell*, 625 F.3d 905, 916 (6th Cir. 2010).

in his discretionary appeal.[97]  The Ohio Supreme Court declined to review any of Kelley's claims, dismissing the entire appeal without considering anything on the merits.

In such a posture, Kelley did not satisfy the requirement to exhaust the ineffective assistance of counsel claim in Ohio courts because he never sought to reopen the appeal.[98] However, if Kelley were to now attempt to file a Rule 26(B) application, such an application likely would be denied as untimely and without grounds to excuse a late filing.[99]   In particular, Kelley himself states in his traverse that he was aware of the entirety of his claim against his appellate lawyer prior to filing his notice of appeal with the Ohio Supreme Court.[100]  Because that notice of appeal was filed 45 days after the appellate judgment, and because, as Kelley admits, he then fully knew the basis for his ineffective assistance argument, there exist no grounds for excusing Kelley's failure to file a Rule 26(B) application and for permitting additional time to reopen the direct appeal.

---

[97] *See*, ECF # 9 at 14.  The State, however, believes that the "nebulous reference to ineffective assistance of counsel in the headings of [Kelley's] propositions of law" might refer to ineffective assistance of trial counsel.  However, Kelley in his traverse makes clear that his claim of ineffective assistance raised to the Ohio Supreme Court concerned alleged ineffective assistance of appellate counsel.  ECF # 25 at 26.

[98] *Goldberg v. Maloney*, 2011 WL 864922, at *3 (N.D. Ohio March 10, 2011) (citations omitted).

[99] Ohio Appellate Rule 26(B) requires that an application to reopen be filed within 90 days of the journalization of the appellate judgment unless good cause can be shown for the delay.

[100] ECF # 25 at 26.  After detailing the allegations against his appellate counsel, and the failure to obtain a remedy for these alleged infractions in other ways, Kelley states that "[a]s a last resort" Kelley determined to raise the ineffective assistance argument "on [my] own to the [Ohio] Supreme Court under 'plain error doctrine' and 'ineffective assistance of appellate counsel.'"

Kelley did not diligently develop his ineffective assistance of counsel allegation in the proper Ohio court in a timely manner.  Accordingly, any ineffective assistance claim is procedurally defaulted.  I recommend that no evidentiary hearing be conducted.

## C.    Standards of review

### 1.    *Non-cognizable claim*

The federal habeas statute, by its own terms, restricts the writ to state prisoners who are in custody in violation of federal law.[101]  Accordingly, it is well-settled that, to the extent a petitioner claims that his custody is a violation of state law, the petitioner has failed to state a claim upon which federal habeas relief may be granted.[102]  In such circumstances, a claim for federal habeas relief based solely on the ground of purported violation of state law is properly dismissed by the federal habeas court as non-cognizable.[103]

But a claimed error of state law may nevertheless serve as the basis for federal habeas relief if such error resulted in the petitioner being denied "fundamental fairness" at trial.[104] The Supreme Court has made clear that it defines "very narrowly" the category of infractions that violate the "fundamental fairness" of a trial.[105]  Specifically, such violations are restricted

---

[101] 28 U.S.C. § 2254(a).

[102] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

[103] *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007).

[104] *Estelle*, 502 U.S. at 67-68.

[105] *Bey*, 500 F.3d at 522, quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990).

to offenses against "'some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'"[106]

The petitioner bears the burden of showing that a principle of fundamental fairness was violated.[107]  In so doing, the federal habeas court must follow the rulings of the state's highest court with respect to state law[108] and may not second-guess a state court's interpretation of its own procedural rules.[109] Further, while, in general, distinct constitutional claims of trial error may not be cumulated to grant habeas relief,[110] the Sixth Circuit has recognized that "'[e]rrors that might not be so prejudicial as to amount to a deprivation of due process when considered alone, may cumulatively produce a trial setting that is fundamentally unfair.'"[111]

### 2.    *Procedural default/waiver*

Under the doctrine of procedural default, the federal habeas court is precluded from reviewing a claim for relief if the petitioner failed to obtain consideration of that claim on its

---

[106] *Id.* at 521, quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996).

[107] *Id.*

[108] *Wainwright v. Goode*, 464 U.S. 78, 84 (1983).

[109] *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988).

[110] *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006).

[111] *Gillard v. Mitchell*, 445 F.3d 883, 898 (6th Cir. 2006), quoting *Walker v. Engle*, 703 F.2d 959, 963 (6th Cir. 1983).

-18-

merits in state court, either because the petitioner failed to raise it when state remedies were still available or due to some other violation of a state procedural rule.[112]

When a violation of a state procedural rule is alleged as the basis for the default, the Sixth Circuit has long-employed a four-part test to determine if the claim is procedurally defaulted in a federal habeas proceeding:

(1)     Does a state procedural rule exist that applies to the petitioner's claim?

(2)     Did the petitioner fail to comply with that rule?

(3)     Did the state court rely on that failure as the basis for its refusal to address the merits of the petitioner's claim?

(4)     Is the state rule violated by the petitioner an adequate and independent state law basis for barring the federal court from considering the claim?[113]

In addition to establishing these elements, the state procedural rule must be shown to be (a) firmly established and (b) regularly followed before the federal habeas court will decline to review an allegedly procedurally defaulted claim.[114]

If a procedural default is established, the default may be overcome if:  (1) the petitioner can show cause for the default and actual prejudice from the court's failure to address the alleged constitutional violation, or (2) that a lack of review of the claims merits

---

[112] *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006).

[113] *Morales v. Mitchell*, 507 F.3d 916, 937 (6th Cir. 2007) (citation omitted).

[114] *Smith v. Ohio Dep't of Rehab. & Corrs.*, 463 F.3d 426, 431 (6th Cir. 2006) (citations omitted).

-19-

will result in a fundamental miscarriage of justice.[115]  In addition, procedural default may also be excused by a showing of actual innocence.[116]

To establish "cause" for the default, a petitioner must generally show that some objective factor, something external to himself, precluded him from complying with the state procedural rule.[117] Demonstrating "prejudice" requires the petitioner to show that the alleged constitutional error worked to his actual and substantial disadvantage, infecting the entire proceeding with error of a constitutional dimension.[118] There can be no prejudice if the petitioner cannot show a reasonable probability of a different outcome at trial.[119]

Notwithstanding these elements, the Supreme Court has held that federal habeas courts are not required to consider an assertion of procedural default before deciding a claim against the petitioner on the merits.[120]  In that regard, the Sixth Circuit has stated that a federal habeas court may bypass an issue of procedural default when that issue presents complicated questions of state law and addressing it is unnecessary to resolving the claim against the petitioner on the merits.[121]

---

[115] *Hicks v. Straub*, 377 F.3d 538, 552-52 (6th Cir. 2004) (citations omitted).

[116] *Id.*

[117] *Coleman v. Thompson*, 501 U.S. 722, 753 (1991).

[118] *United States v. Frady*, 456 U.S. 152, 170 (1982).

[119] *Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003).

[120] *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997).

[121] *Hudson v. Jones*, 351 F.3d 212, 215-16 (6th Cir. 2003).

-20-

3.      *AEDPA standard of review*

Where a state court adjudicated the merits of a claim now asserted in a federal habeas petition, the controlling federal statute is plain that the federal habeas court may use that claim as a basis for granting the writ only if the state decision was either contrary to clearly established federal law as determined by the United States Supreme Court or was an unreasonable application of that law.[122]

In applying that statute, a federal habeas court is guided by the well-known teachings of *Williams v. Taylor*.[123]  As stated by the United States Supreme Court in *Williams,* a decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts."[124] *Williams* further holds that a state court decision is an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."[125]

Moreover, a federal court may not find that a state court unreasonably applied clearly established federal law simply because the habeas court "concludes on its independent

---

[122] 28 U.S.C. § 2254(d).

[123] *Williams v. Taylor*, 529 U.S. 362 (2000).

[124] *Id.* at 412.  *Accord*, *Broom v. Mitchell*, 441 F.3d 392, 398 (6th Cir. 2006).

[125] *Williams*, 529 U.S. at 413; *Broom*, 441 F.3d at 398.

judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly."[126]  Rather, the state court holding may be disturbed only upon showing that it was "objectively unreasonable."[127]

In addition, a state court may be found to have unreasonably applied clearly established federal law if it unreasonably extends or unreasonably fails to extend a clearly established federal legal principle to a new context.[128]

Finally, where a state court does not address the merits of a federal claim properly presented to it, "the deference due [a state court decision by the federal habeas court] under the AEDPA does not apply."[129]  Then, the federal court is to review the claim *de novo*.[130]

## D.  Application of standards – the petition should be dismissed and/or denied

### 1.  Ground one

In his first ground for habeas relief[131] Kelley alleges that his conviction was obtained by an unconstitutional search and seizure, as well as by an unlawful arrest.  Specifically, he argues that the testimony of representatives of a crime lab was fabricated and that he was

---

[126] *Williams*, 529 U.S. at 411.

[127] *Id.* at 409.

[128] *Id.* at 405-07.  *Accord*, *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

[129] *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003).

[130] *Id.*

[131] I again note that in his traverse Kelley attempted to expand this ground by adding a second element.  Because that addition was not approved by the Court as an amendment, it is not considered here.

-22-

subject to a racially discriminatory investigation.[132]  As the State observes, Kelley did not present the crime lab fabrication charge to either the Ohio appeals court or to the Ohio Supreme Court, and he asserted the discriminatory investigation allegation only to the Ohio Supreme Court.[133]

---

[132] ECF # 1 at 4.

[133] ECF # 9 at 12-13.

In both circumstances described above, the Ohio Supreme Court was not provided with an opportunity to address the claims asserted here.[134]  Further, Ohio's *res judicata* rule precludes raising in a subsequent filing any issue that could have been raised earlier.[135] Ohio's *res judicata* rule has long been recognized as an adequate and independent state ground that may bar federal habeas review.[136]  Moreover, as discussed, "cause" for the procedural default here cannot be established by ineffective assistance of counsel, and Kelley has neither asserted nor established actual innocence.

Therefore, I recommend finding that ground one is procedurally defaulted and properly subject to dismissal.

## 2.     *Ground two*

In the second ground for federal habeas relief, Kelley argues that he was interrogated without being advised of his right against self-incrimination.[137]  As before, the State notes that, although Kelley raised this argument to the Supreme Court of Ohio, he did not first assert it to the state appeals court.[138]

---

[134] The Ohio Supreme Court lacks the jurisdiction to consider constitutional issues that were not raised or considered on direct appeal.  *See*, *Leroy v. Marshall*, 757 F.2d 94, 97, 99-100 (6th Cir. 1985).

[135] *White v. Mitchell*, 431 F.3d 517, 526-27 (6th Cir. 2005) (citing *State v. Perry*, 10 Ohio St. 2d 175, 226 N.E.2d 104 (1967)).

[136] *Monzo*, 281 F.3d at 577.

[137] ECF # 1 at 5, 9.

[138] ECF # 9 at 16.

Accordingly, for the reasons cited in my analysis of ground one, I recommend finding that ground two is also procedurally defaulted and properly subject to dismissal.

**3.      *Ground three***

Kelley contends here that his conviction was "obtained by use of a coerced confession."[139]  The allegation is that the testimony against Kelley by Crystal Sisson was "coerced" from Sisson by police who took advantage of her purported mental limitations.[140]

In his direct appeal, Kelley challenged the sufficiency of the evidence against him, and in doing so:  (a) pointed to inconsistencies in Sisson's testimony, (b) argued that as a co-defendant she had a motive to lie, and (c) further argued that her testimony was implausible.[141]  However, as the State observes, this argument did not also include the claim, as stated in the habeas petition, that Sisson's testimony was coerced or perjured.[142]  Further, as the State also observes, Kelley then purportedly raised the coercion and perjury argument to the Ohio Supreme Court by inclusion within his factual narrative but not as a proposition of law.[143]

For the reasons given earlier, I recommend finding that this ground for relief is procedurally defaulted for not being presented to the Ohio appeals court on direct appeal.

---

[139] ECF # 1 at 6.

[140] *Id.* at 9.

[141] *See,* ECF # 9, Attachment at 35-36.

[142] ECF # 9 at 21.

[143] *Id.*

I further recommend finding, on the analysis given above, that this default is not cured by any argument of ineffective assistance of appellate counsel.  Thus, I ultimately recommend that this ground for relief be found properly subject to dismissal.

### 4.      *Ground four*

In this ground Kelley argues that the prosecution withheld exculpatory evidence and prevented him from procuring witnesses for his defense.[144]  The essence of this argument is that the prosecution permitted the cremation of the victim's body when Kelley wanted it for an additional autopsy (withholding of exculpatory evidence) and, further, that the trial court refused to allow the testimony of defense experts as to alternative causes of death.[145]

With this claim, I note first that the aspect dealing with cremation of the victim was not presented to the Ohio courts.  As to the element dealing with refusal to allow testimony, the State's argument is that Kelley did not fairly present the claim to the Ohio appeals court as a federal constitutional claim but solely as an abuse of discretion/state law issue.[146]  In fact, a review of the relevant parts of Kelley's appellate brief,[147] and of the state appellate opinion,[148] confirm that apart from brief introductory language about the right to cross-examination arising in a case from the United States Supreme Court, the claim was

---

[144] ECF # 1 at 6, 11.

[145] *Id.* at 11, 12.

[146] ECF # 9 at 23.

[147] ECF # 9, Attachment at 46-49.

[148] *Id.* at 108-09.

presented and decided on the basis of Ohio Evidence Rule 702 and a trial court's abuse of discretion.

As stated above, it is well-settled that, to the degree a petitioner's claim is based on a purported violation of state law, the petitioner has not stated a claim for habeas relief.[149] A claim arising out of the admission of evidence or error in state law does not rise to a level of constitutional magnitude unless the error was so egregious that the petitioner was denied a fundamentally fair trial.[150]  Furthermore, the Supreme Court has defined "very narrowly" the category of infractions that violate "fundamental fairness."[151]  In essence, whether the admission or exclusion of evidence has denied a defendant fundamental fairness "turns upon whether the evidence is material in the sense of a crucial, critical highly significant factor."[152]

In this case, Kelley wanted to call a pediatric neurologist to testify as to the cause and timing of the victim's death.[153]  The prosecution, noting that the evidence was gained at an autopsy, asserted that because a neurologist deals with living patients, Kelley's expert would not be qualified to offer opinions as to what conclusions could be drawn from autopsy results, as would a pathologist.[154]  The trial court agreed with the prosecution and concluded

---

[149] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

[150] *Estelle*, 502 U.S. at 67-68.

[151] *Bey*, 500 F.3d at 522.

[152] *Ege v. Yukins*, 485 F.3d 364, 375 (6th Cir. 2007) (citation omitted).

[153] ECF # 9, Attachment at 114-15.

[154] *Id.*

-27-

that Kelley's expert was not qualified to testify as to any conclusions that could be reached on the basis of the autopsy report.[155]  Based on Ohio Evidence Rule 104(A), which makes the trial court the primary "gatekeeper" concerning the qualifications needed for a witness, and under Rule 702, which provides for expert witnesses, the Ohio appeals court found that the trial court did not abuse its discretion in denying Kelley's expert the right to testify as to conclusions to be drawn from the autopsy report.[156]  The appeals court further found that, because any opinion anticipated from this expert was similar to an opinion already given by another expert, any error here would have been harmless.[157]

On this record, I recommend finding first, as the State asserts, that this ground was procedurally defaulted for lack of fair presentment as a federal claim to the Ohio court.  If so defaulted, I recommend finding, as before, that the default has not been excused. Alternatively, even if fairly presented, I recommend that this ground be denied because the decision of the state appeals court was not an unreasonable application of clearly established federal law,[158] as outlined above.

---

[155] *Id.*

[156] *Id.*, at 117.

[157] *Id.*

[158] *Williams*, 529 U.S. at 407-08.

### 5.     *Grounds five, six and seven*

Kelley here contends that his jury was impermissibly drawn from predominately white communities.[159]  Moreover, in the supporting facts narrative for ground five in his original petition, Kelley also developed entirely new claims that challenged the indictment, the jury instructions, the trial venue, and statute under which he was convicted.[160]  These new claims are restated as specific claims in grounds six and seven, which were added by amendment.

As to grounds five, six, and seven, no part of these claims were  advanced to the Ohio appeals court.  Significant portions of these arguments were, however, raised to the Ohio Supreme Court.[161]

Thus, on this record and under the authority cited earlier, because the claims were not first raised to the Ohio appeals court, I recommend finding that these grounds are procedurally defaulted.  Further, for the reasons stated above, I also recommend finding that Kelley has not excused these defaults.  Accordingly, I recommend that grounds five, six, and seven be dismissed as procedurally defaulted.

### Conclusion

For the above-stated reasons, I recommend first that no evidentiary hearing be held. I further recommend that the petition of William Kelley for habeas relief be dismissed as

---

[159] ECF # 1 at 12-13.

[160] *Id.* at 13-16.

[161] *See*, ECF # 9, Attachment at 135-36.

procedurally defaulted or waived.  Alternatively, as stated above, in the event ground four

is not dismissed, I recommend that this ground be denied because the state court opinion on

this issue is not an unreasonable application of clearly established federal law.

Dated:   December 1, 2011                           s/ William H. Baughman, Jr.
                                                    United States Magistrate Judge


## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.[162]

---

[162] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).